Michael Kind, Esq.
Nevada Bar No.: 13903
**KIND LAW**
8860 South Maryland Parkway, Suite 106
Las Vegas, Nevada 89123
(702) 337-2322
(702) 329-5881 (fax)
mk@kindlaw.com

George Haines Esq.
Nevada Bar No. 9411
Gerardo Avalos Esq.
Nevada Bar No. 15171
**FREEDOM LAW FIRM**
8985 S. Eastern Ave., Suite 350
Las Vegas, Nevada 89123
(702) 880-5554
(702) 385-5518 (fax)
Ghaines@freedomlegalteam.com
*Counsel for Plaintiff Bobbie Darnell*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| Bobbie Darnell,<br><br>                    Plaintiff,<br>  v.<br><br>Equifax Information Services, LLC;<br>Experian Information Solutions, Inc.;<br>Southern California Edison Company;<br>Snap-On Credit, LLC; Conn Appliances,<br>Inc.; and PAC Auto Finance,<br><br>                    Defendants. | Case No.:<br><br>**Complaint for damages under the FCRA, 15 U.S.C. § 1681** |

---

# Introduction

1. The United States Congress has found the banking system is dependent up-on fair and accurate credit reporting.  Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), to ensure fair and accurate re-porting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2. The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting. Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

3. Bobbie Darnell ("Plaintiff"), by counsel, brings this action to challenge the actions of Equifax Information Services, LLC ("Equifax"); Experian Information Solutions, Inc. ("Experian"); Southern California Edison Company ("SCE"); Snap-On Credit, LLC ("Snap-On"); Conn Appliances, Inc. ("Conn"); and PAC Auto Finance ("PAC") (jointly as "Defendants"), with regard to erroneous reports of derogatory credit information to national reporting agencies and Defendants'

COMPLAINT

failure to properly investigate Plaintiff's disputes.

4. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, which Plaintiff alleges on personal knowledge.

5. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

6. Unless otherwise stated, all the conduct engaged in by Defendants took place in Nevada.

7. Any violations by Defendants were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violations.

8. Defendants failed to properly investigate Plaintiff's disputes, damaging Plaintiff's creditworthiness.

**Jurisdiction and Venue**

9. Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331 (federal question jurisdiction); 15 U.S.C. § 1681.

10. This action arises out of Defendants' violations of the FCRA.

11. Venue is proper in the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1391(b) because Plaintiff is a resident of Clark County, Nevada and because Defendants are subject to personal jurisdiction in Clark County, Nevada as they conduct business here. Venue is also proper because the conduct giving rise to this action occurred in Nevada. 28 U.S.C. § 1391(b)(2).

**Parties**

12. Plaintiff is a natural person living in Clark County, Nevada. In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

13. Defendants are each a corporation doing business in the State of Nevada.

14. SCE, Snap-On, Conn, and PAC are each furnishers of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnish information to a consumer credit reporting agency.

15. Experian and Equifax regularly assemble and/or evaluate consumer credit information for the purpose of furnishing consumer reports to third parties and use interstate commerce to prepare and/or furnish the reports. These entities are "consumer reporting agencies" as that term is defined by 15 U.S.C. §1681a(f).

16. Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the named Defendants.

## — THE GENERAL ALLEGATIONS —

### Re: Bankruptcy Case No. 19-13175

17. On or about May 21, 2019, Plaintiff filed for bankruptcy in the United States bankruptcy Court for the District of Nevada pursuant to 11 U.S.C. §1301 et seq. (the "bankruptcy").

18. The obligations to each creditor-furnisher herein (as applicable) were scheduled in the bankruptcy and each respective creditor, or its predecessor in interest, received notice of the bankruptcy.

19. None of the creditor-furnishers named herein filed any proceedings to declare their alleged debts "non-dischargeable" pursuant to 11 U.S.C. § 523 et seq.

20. No creditor-furnisher named herein obtained relief from the "automatic stay" codified at 11 U.S.C. §362 et seq. while Plaintiff's bankruptcy was pending to pursue Plaintiff for any personal liability.

21. Further, while the automatic stay was in effect during the bankruptcy, it was illegal and inaccurate for any creditor-furnisher named herein to report any post-bankruptcy derogatory collection information, pursuant to the Orders

entered by the bankruptcy Court.

22. The accounts named herein (as applicable) were discharged through the bankruptcy on Mar 31, 2020.

23. However, Defendants either reported or caused to be reported inaccurate information as discussed below after Plaintiff's debts were discharged.

24. Additionally, Defendants' inaccurate reporting did not comply with the Consumer Data Industry Association's Metro 2 reporting standards, which provides guidance for credit reporting and FCRA compliance.

25. The Consumer Data Industry Association ("CDIA") publishes the Metro 2 ("Metro 2") reporting standards to assist furnishers with their compliance requirements under the FCRA.

26. Courts rely on such guidance to determine furnisher liability. *See, e.g., In re Helmes,* 336 B.R. 105, 107 (Bankr. E.D. Va. 2005) (finding that "industry standards require that a debt discharged in bankruptcy be reported to a credit reporting agency with the notation `Discharged in bankruptcy' and with a zero balance due").

27. On information and belief, Defendants adopted and at all times relevant implemented the Metro 2 format.

28. On information and belief, each furnisher named herein adopted the Metro 2 reporting standards and at all times relevant implemented the Metro 2 format as an integral aspect of their respective duties under the FCRA to have in place adequate and reasonable policies and procedures to handle investigations of disputed information.

29. Each furnisher named herein failed to conform to the Metro 2 Format when reporting on Plaintiff's accounts after Plaintiff filed bankruptcy as further set forth below.

30. In turn, each of the credit reporting agencies named herein, reported and

COMPLAINT                                    - 5 -

re-reported the inaccurate information, thus violating their duty to follow reasonable procedures to assure maximum possible accuracy under 15 U.S.C. § 1681e(b) when preparing a consumer report.

31. To this end, the adverse reporting on Plaintiff's consumer report departed from the credit industry's own reporting standards and was not only inaccurate, but also materially misleading under the CDIA's standards as well.

32. A "materially misleading" statement is concerned with omissions to credit entries, that in context create misperceptions about otherwise may be factually accurate data. *Gorman v. Wolpoff & Abramson, LLP,* 584 F.3d 1147, 1163 (9th Cir. 2009).

**— THE EXPERIAN VIOLATIONS —**

**Experian, SCE, Conn, and Snap-On Misreported**

**Consumer Information and Failed to Reasonably**

**Investigate Plaintiff's Dispute**

**Re: SCE Account No. ****9213; Conn Account No. ****4514;**

**and Snap-On Account No. ****0814**

33. In Plaintiff's consumer report from Experian dated Jul 14, 2020, Experian and SCE inaccurately reported Plaintiff's account ending in ****9213 with a balance of $59 and the status updated: Collection account. $59 past due as of June 2020. This was inaccurate, misleading, and derogatory because this account was included in Plaintiff's bankruptcy which was filed on May 21, 2019 and discharged on Mar 31, 2020.

34. In Plaintiff's consumer report from Experian dated Jul 14, 2020, Experian and Conn inaccurately reported Plaintiff's account ending in ****4514 with a balance of $3,555 and the status: Account Charged Off. $3,569 written off and $3,555 past due as of June 2020. This was inaccurate, misleading, and derogatory because this account was included in Plaintiff's bankruptcy which

was discharged on Mar 31, 2020.

35. In Plaintiff's consumer report from Experian dated Jul 14, 2020, Experian and Snap-On inaccurately reported Plaintiff's account ending in ****0814 with a balance of $4,169 and the status: Account Charged Off. $3,812 written off and $4,169 past due as of April 2020. This was inaccurate, misleading, and derogatory because this account was included in Plaintiff's bankruptcy which was discharged on Mar 31, 2020.

36. On Oct 30, 2020, Plaintiff disputed the inaccurate reporting pursuant to 15 U.S.C. § 1681i, by notifying Experian, in writing, of the inaccurate, misleading, and derogatory information.

37. Specifically, Plaintiff sent a letter, certified, return receipt, to Experian, requesting the above inaccurate information be updated, modified, or corrected.

38. Experian was required to conduct a reinvestigation into the disputed information on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

39. Upon information and belief, Experian timely notified SCE, Conn, and Snap-On regarding Plaintiff's dispute, as required under 15 U.S.C. § 1681i(a)(2).

40. Upon information and belief, Experian provided SCE, Conn, and Snap-On with a notice regarding Plaintiff's dispute under 15 U.S.C. § 1681i(a)(5)(A).

41. Upon information and belief, Experian provided all relevant information to SCE, Conn, and Snap-On regarding Plaintiff's dispute, as required under 15 U.S.C. § 1681i(a)(2).

42. On or around April 29, 2021, Plaintiff received a second credit report from Experian, demonstrating that despite Plaintiff's dispute, no changes were made in regard to the disputed accounts mentioned above (33., 34., 35.).

43. A reasonable investigation by Experian, SCE, Conn, and Snap-On would have determined that they were reporting the above disputed information

inaccurately.

44. Experian, SCE, Conn, and Snap-On failed to reasonably review all relevant information provided by Plaintiff in Plaintiff's dispute, as required by and in violation of 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b), respectively.

45. Upon information and belief, SCE, Conn, and Snap-On  continued to report the inaccurate information.

46. In turn, Experian re-reported the inaccurate information, thus violating its duty to follow reasonable procedures to assure maximum possible accuracy under 15 U.S.C. § 1681e(b) when preparing a consumer report.

47. Experian, SCE, Conn, and Snap-On, upon receipt of Plaintiff's dispute, failed to conduct a reasonable investigation or reinvestigation with respect to the disputed information as required by 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b), respectively.

48. Due to Experian, SCE, Conn, and Snap-On's failures to reasonably investigate, they further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b), respectively.

49. Experian, SCE, Conn, and Snap-On's continued inaccurate, misleading, and derogatory reporting was knowing and willful, in light of their knowledge of the actual error. Plaintiff is, accordingly, eligible for statutory damages.

50. Also as a result of Experian, SCE, Conn, and Snap-On's continued inaccurate, misleading, and derogatory reporting, Plaintiff has suffered actual damages, including without limitation, fear of credit denials, out-of-pocket expenses in challenging the inaccurate reporting, damage to Plaintiff's creditworthiness, and emotional distress.

51. By inaccurately reporting consumer information after notice and confirmation

of their errors, Experian, SCE, Conn, and Snap-On failed to take the appropriate measures as required under 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b), respectively.

— THE EQUIFAX VIOLATIONS —

**Equifax and PAC Misreported Consumer Information**

**and Failed to Reasonably Investigate Plaintiff's Dispute**

**Re: PAC Account No. ****02**

52. In Plaintiff's consumer report from Equifax dated Jul 14, 2020, Equifax and PAC inaccurately reported Plaintiff's account ending in ****02 with a status: Charge Off.  This was inaccurate, misleading, and derogatory because  this account was include in Plaintiff's bankruptcy filed on May 21, 2019 and Plaintiff received a discharge on Mar 31, 2020.

53. On Oct 30, 2020, Plaintiff disputed the inaccurate reporting pursuant to 15 U.S.C. § 1681i, by notifying Equifax, in writing, of the inaccurate, misleading, and derogatory information.

54. Specifically, Plaintiff sent a letter, certified, return receipt, to Equifax, requesting the above inaccurate information be updated, modified, or corrected.

55. Equifax was required to conduct a reinvestigation into the disputed information on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

56. Upon information and belief, Equifax timely notified PAC regarding Plaintiff's dispute, as required under 15 U.S.C. § 1681i(a)(2).

57. Upon information and belief, Equifax provided PAC with a notice regarding Plaintiff's dispute under 15 U.S.C. § 1681i(a)(5)(A).

58. Upon information and belief, Equifax provided all relevant information to PAC regarding Plaintiff's dispute, as required under 15 U.S.C. § 1681i(a)(2).

59. On or around April 29, 2021, Plaintiff received a second credit report from Equifax, demonstrating that despite Plaintiff's dispute, no changes were made

in regard the disputed account.

60. A reasonable investigation by Equifax and PAC would have determined that they were reporting the above disputed information inaccurately.

61. Equifax  and PAC failed to reasonably review all relevant information provided by Plaintiff in Plaintiff's dispute, as required by and in violation of 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b), respectively.

62. Upon information and belief, PAC continued to report the inaccurate information.

63. In turn, Equifax re-reported the inaccurate information, thus violating its duty to follow reasonable procedures to assure maximum possible accuracy under 15 U.S.C. § 1681e(b) when preparing a consumer report.

64. Equifax and PAC, upon receipt of Plaintiff's dispute, failed to conduct a reasonable investigation or reinvestigation with respect to the disputed information as required by 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b), respectively.

65. Due to Equifax  and PAC's failure to reasonably investigate, they further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b), respectively.

66. Equifax and PAC's continued inaccurate, misleading, and derogatory reporting was knowing and willful, in light of their knowledge of the actual error. Plaintiff is, accordingly, eligible for statutory damages.

67. Also as a result of Equifax and PAC's continued inaccurate, misleading, and derogatory reporting, Plaintiff has suffered actual damages, including without limitation, fear of credit denials, out-of-pocket expenses in challenging the inaccurate reporting, damage to Plaintiff's creditworthiness, and emotional

distress.

68. By inaccurately reporting consumer information after notice and confirmation of their errors, Equifax and PAC failed to take the appropriate measures as required under 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b), respectively.

### Plaintiff's damages

69. In addition to Plaintiff's creditworthiness being negatively impacted, Plaintiff suffered emotional distress and mental anguish as a result of Defendants' actions described herein. In addition, Plaintiff incurred out-of-pocket costs and time in attempts to dispute Defendants' actions. Plaintiff further suffered humiliation and embarrassment.

### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681

70. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

71. The foregoing acts and omissions constitute numerous and multiple willful, reckless, or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C § 1681, et seq.

72. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Defendants.

73. As a result of each and every negligent noncompliance of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Defendants.

**Prayer for relief**

74. Plaintiff prays that judgment be entered against Defendants, and Plaintiff be awarded damages from Defendants, as follows:

- An award of actual damages pursuant to 15 U.S.C. § 1681n(a)(1);
- An award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);
- An award of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);
- An award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1); and
- Any other relief that this Court deems just and proper.

**Jury Demand**

75. Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: May 26, 2021.

                          Respectfully submitted,

                          KIND LAW

                           /s/ Michael Kind
                          Michael Kind, Esq.
                          8860 South Maryland Parkway, Suite 106
                          Las Vegas, Nevada 89123

                          FREEDOM LAW FIRM

                           /s/ George Haines
                          George Haines, Esq.
                          8985 S. Eastern Ave., Suite 350
                          Las Vegas, Nevada 89123
                          *Counsel for Plaintiff Bobbie Darnell*